ANDERSON *v.* MATT.

1. NEGLIGENCE—PLEADING—MOTOR-VEHICLE ACT—JUDICIAL NOTICE—TRIAL—INSTRUCTIONS.

In an action for personal injuries caused by a collision between the automobile in which plaintiff was riding and defendant's automobile, where plaintiff's declaration charged that defendant was driving his automobile "in a careless, wanton, and negligent manner, * * * driving said automobile at a wanton, careless, and excessive rate of speed to wit, at the rate of 40 miles per hour and upwards," and there was testimony tending to prove it, the trial court was not in error in instructing the jury upon the statutory provisions limiting the rate of speed to 25 miles per hour, since the court is required to take judicial notice of the statute where the declaration brings the case within its provisions, although no formal reference to the statute is made therein.

2. APPEAL AND ERROR—TRIAL—ARGUMENT OF COUNSEL—HARMLESS ERROR.

Statements by plaintiff's counsel, in his argument to the jury, of truisms which were as self-evident to them before as after he uttered them, *held*, not prejudicial.

3. SAME—CURING ERROR.

Where it was known to the jury that a man had been killed in the collision, a remark by plaintiff's counsel, addressed to defendant, that he had done a crime less than the crime of premeditated murder, *held*, not reversible error, in view of the fact that the court instructed the jury that the mere fact that one of the occupants of the other car was killed could not in itself create a liability on the part of the defendant to the plaintiff, and the remark was not reflected in the verdict, which is not excessive.

4. NEGLIGENCE—DAMAGES—EXCESSIVE VERDICT.

Where plaintiff's injuries were indisputably serious and

Excessiveness of damages of verdicts in actions for personal injuries other than death is discussed in note in L. R. A. 1915F, 30.

painful, for a time at least, and there is testimony that she was permanently injured, a verdict for $2,000 cannot be said to be excessive.

Error to Genesee; Brennan (Fred W.), J.     Submitted January 2, 1923.     (Docket No. 15.)     Decided July 19, 1923.

Case by Alma Anderson against Lester Matt for personal injuries.     Judgment for plaintiff.     Defendant brings error.     Affirmed.

*Vandeveer & Foster,* for appellant.

*McCormick & Sharpe,* for appellee.

STEERE, J.     Plaintiff is a married woman under 30 years of age residing in Bay City, Michigan.     On Sunday, May 8, 1921, she was injured in a collision between an automobile in which she was riding and one driven by defendant.     Charging that the accident was caused by his negligence she brought this action against him in the circuit court of Genesee county and recovered a judgment of $2,000 as compensation for her injuries.     Defendant seeks reversal on various assignments of error covering refusal to grant him a new trial, errors in ruling during the trial, in the charge of the court, prejudicial comment of plaintiff's counsel to the jury, and that the verdict was excessive.

The occupants of the two cars which met in collision were out for a Sunday afternoon drive.     Plaintiff's party of six left Bay City shortly after noon in a Mitchell car owned by an elderly man named Hohse and driven by George Reichenbach, his son-in-law, who was an experienced driver.     The other occupants of the car were their wives, plaintiff and her husband. Driving through Saginaw they proceeded toward Vassar easterly over the Frankenmuth road to a point

about a mile west of Frankenmuth where the accident occurred.

Defendant is a married man over 40 years of age, living and engaged in the theater business at Flint, Michigan. He owned and drove a Packard limousine car, and in the afternoon of that Sunday went for a drive accompanied by his wife, daughter and a Mr. Sutherland and his wife. They drove from Flint towards Saginaw and were west bound on the Frankenmuth road when the two cars collided, at about 3 o'clock in the afternoon. They were driving on a smooth graveled road, then very dry and dusty. The day was warm and the sun shining. It was shown that but a short time before the collision a west-bound Cadillac coupé running at a speed variously estimated at from 40 to 60 miles an hour passed defendant's car on the left raising a cloud of dust which the prevailing wind drifted southerly to the side of the road plaintiff was driving easterly upon. The Packard and Mitchell cars as they approached each other were in this cloud of dust which is testified to have been so dense that objects could be discerned only a few feet away, and while yet enveloped in the dust cloud they collided with disastrous results to the Mitchell car and certain of its occupants.

Of the results, Reichenbach, who was driving the Mitchell car, stated in part, and it is not disputed:

—"there was a crash, and we were in the ditch. * * * The next thing I remember was some men taking the top off our machine and lifting us out. * * * The first I saw of Mrs. Anderson was when they were taking her to the hospital. I did not see her in the wreck, as my father-in-law was lying across Mrs. Hohse. He was dead, with his head split open. The rear end of our car was damaged, the axle being broken, two rear wheels broken, the rear fenders smashed, and the gasoline tank on the rear was smashed * * * The top was torn to pieces, and

the stanchions that held the top were broken. There were no marks on the front of our car. The Matt car, I noticed, had a broken left front wheel, and a hole torn in the left side of the body of the car. * * * The tires on the left side of our car were also cut open. * * * I next saw my sister-in-law, Mrs. Anderson, in a hospital in Saginaw."

The Packard car was not capsized nor its occupants injured. The road at that point was straight, level and graveled a width of 18 or 20 feet, with sloping shoulders on each side towards the ditches which were 22 or 23 feet apart. It is described as a "double track road," which a disinterested witness said was "quite wide, enough for three cars to pass." Although the Cadillac car going west had just met and passed the Mitchell car, raising a cloud of dust which had not yet drifted away, there were no other cars in the immediate vicinity of the accident and nothing to interfere with the cars which collided safely passing each other if each driver had kept on his side of the middle of the road. Each party claims to have been on the right side of the road, and that the other was the offender.

Defendant testified that his Packard car was an Imperial limousine with 12 cylinders weighing about 4,300 pounds and the fastest he ever drove it was about 65 miles an hour; that on the day of the accident he drove leisurely, "might have been going about 20 or 25 miles an hour," was on the right-hand side of the road and "about a minute and a half" before the "crash" a Cadillac coupé passed them going about 50 miles an hour; the dust was so thick he soon lost sight of it and he "drove from one-eighth to a quarter of a mile in the dust after the Cadillac passed me * * * during which time my view was obstructed so I could not see a thing" until the Mitchell car "loomed up in sight." He described what then occurred in part as follows:

"The Cadillac went like that (illustrating) by, and a big cloud of dust came up, but as quick as an eye I see another car circling, coming from the right-hand side of the road, over towards my side, over on my side. When the other car must have seen me, the car turned back not quick enough, the back end of his car ran into the front wheel of my car, thrown a quarter around in the road. I had started to stop when I saw the man coming. I put my brake on. I was not going over between 10 and 15 miles an hour. I was coming nearly to a stop, and I saw the other car come directly, coming right for me, right-hand wheel caught my front wheel, tore it off, turned me practically across the road, and his car ran on 40 feet from where my car was, and he went into the ditch. * * * The Mitchell car obliquely stopped my car and forced it back a little. We straddled the center of the road when we stopped."

Reichenbach stated he was well over on the right-hand side of the road traveling about 15 or 16 miles an hour when they passed the Cadillac car which raised a cloud of dust through which he was driving and looking ahead and could see nothing but dust until, as he states, "I saw a cream colored car approaching me about six or eight feet away, just northeast of my left front wheel. It was on a slight angle with the road. The car was approaching so fast that I had no more than seen it when there was a crash and we were in the ditch." There was other testimony in support of these conflicting claims clearly making the questions of defendant's negligence and plaintiff's contributory negligence issues of fact for the jury. They were so submitted by the court with specific instruction that negligence on the part of defendant would not excuse any negligence on the part of the driver of the Mitchell car, and that if he was guilty of any negligence, however slight, plaintiff could not recover.

It is urged for defendant that the court erroneously instructed the jury upon the statutory provisions as

to excessive speed and the care an automobile driver is required to exercise, it being said in defendant's brief:

"There is no claim in this case that the defendant was driving his car at a rate of speed in excess of 25 miles per hour, but notwithstanding this, the court submitted the case to the jury upon a theory not pleaded nor relied upon, and injected into the case a false hypothesis."

With this we are unable to agree. While special reference to the statute is not made in plaintiff's declaration it charges with proper introductory matter that defendant was driving his automobile "in a careless, wanton and negligent manner and was guilty of the following acts of carelessness, wantonness and negligence," amongst which were "driving said automobile at a wanton, careless and excessive rate of speed, to wit: at the rate of 40 miles per hour and upwards."

Plaintiff pleaded excessive speed as a ground of negligence and there was testimony tending to prove it. A witness for plaintiff named Ranke who had stopped at the side of the road shortly before the accident, about a quarter of a mile east of where it occurred, testified:

"The Packard and Cadillac passed me at the rate of about 45 miles an hour, the Packard trailing the Cadillac. The Cadillac car kicked up quite a lot of dust."

A witness named Daley who was with Ranke also estimated the speed of the two cars at about 45 miles an hour, said they were about two rods apart, the Packard was on the left side of the road and sounded its horn about the time it passed them. A witness named Willshel testified that he was in a car parked by the roadside not far from the place of the accident when it occurred, and just before then an inclosed

car passed at the rate of 40 to 50 miles an hour with defendant's car following it about 20 feet behind and traveling at the same rate of speed. His wife testified to the same effect, stating that both cars were then in the middle of the road. A witness named Ebmeyer testified that he was stopped by the side of the road not more than a block east of where the accident occurred, repairing a tire, and while so engaged the Cadillac car passed swiftly in a cloud of dust going as he estimated it not less than 40 miles an hour with defendant's car not far behind and not losing any on the Cadillac.

While plaintiff's declaration did not by number or name make reference to the statute regarding the limit of speed within which automobiles may be driven, its allegations made plain that wantonly exceeding the statutory speed limit was a ground of negligence relied upon. A formal reference to the statute would not make that claim clearer and is not required where the declaration contains the averments necessary to bring the case within the statute, of which courts are required to take judicial notice. *Hayes* v. *West Bay City,* 91 Mich. 418. *Vide,* also, *Fuller* v. *City of Jackson,* 82 Mich. 480; *Sweeney* v. *Lustfield,* 116 Mich. 696. Confirmatory of the views expressed in preceding decisions the judicature act provides (3 Comp. Laws 1915, § 12454) that "no declaration shall be deemed insufficient which shall contain such information as shall reasonably inform the defendant of the nature of the case he is called upon to defend."

Prejudicial error is urged on three excerpts from the argument of plaintiff's counsel to the jury, as follows:

"Nothing can be done to bring back the life of the man that was snuffed out."

To this defendant's counsel took exception, saying:

"We are not trying that case," and the court replied "No."

"Lester Matt, you have done a crime less than the crime of premeditated murder."

To which defendant's counsel objected and took exception, and the court replied "Yes."

"There is a limit to the amount of expense you can put in a case." .

To which counsel for defendant objected as improper argument and took exception. Whereupon plaintiff's counsel announced, "I withdraw it."

Why or in what connection counsel indulged in these · fragmentary remarks does not appear. The first and last quoted truisms were as self-evident to the jury before as they were after he uttered them. The fact that Mr. Hohse was instantly killed as a result of the accident was an item of the *res gestæ* properly in proof and known to the jury. Defendant himself testified that he went to the assistance of those injured in the other car, and referring to the "man who was killed" said he and Sutherland got him "out of the ditch and laid him alongside the road." Counsel's personal address to defendant accusing him of having committed a crime less than premeditated murder was more of an inflammatory nature and ill-advised, although if the facts were as plaintiff claimed they might suggest in a criminal case involuntary manslaughter. The court charged upon the subject, in the language defendant requested, that the jury could not "render a verdict because of sympathy, prejudice or passion, and the mere fact that one of the occupants of the Mitchell car was killed could not in itself create a liability on the part of the defendant to the plaintiff to respond to her in damages." The record does not disclose that any other requests, oral or written, were made by defendant for further

instruction to the jury. The court instructed the jury fully and fairly as to the measure of damages. Without approving of the comment complained of we are unable to find that it was reflected in the verdict or that the same was excessive.

Plaintiff's injuries were indisputably serious and painful, for a time at least, and there is testimony that she was permanently injured. A physician called to the place of accident to attend those injured took her from there to the hospital for care and medical attention. She was covered with blood, her clothing was torn, one of her eyes was protruding and injured, with a large blood clot upon it. At the hospital she was bandaged with adhesive plasters around her body for broken ribs and treated with bags of ice upon her face to relieve the clotted eye. About a week later she was taken to her mother's home where she remained until September, unable to work and suffering from her injuries. Her mother testified to her injuries and that she "helped to dress her every day." Dr. Perkins, who first saw her at her mother's home, testified that when called he found her chest strapped up with adhesive tape, she had numerous discolorations from bruises, some skin abrasions about her face, her body was more or less generally bruised, and she remained under his care until about July 10th; that he treated her for fractured ribs, did not recall how many, but would say two on the right side and some injury to the left side; she developed a pustular skin infection in the nature of boils on her chest, first coming under her arms, followed by a series of them on her body and limbs, partly due to her injury and partly to the irritation produced by the necessary strapping of her chest. She testified that she suffered severely from her injuries, had never worn glasses before the accident, but was obliged to do so continually afterwards, could

not read and suffered pain in the injured eye without them.    There was testimony that certain of her injuries were permanent.    With such evidence before the jury it cannot be said the damages were excessive.

We find no reversible error, and the judgment will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.